UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| CHONGQING QIULONG TECHNOLOGY CORPORATION LIMITED, DBA SURRON, | Civil Action No.: 1-23-cv-00442-RP |
| Plaintiff, | |
| v. | |
| TANLI POWER TECHNOLOGY (CHONGQING) CO., LTD AND TALARIA POWER TECH (HONGKONG) CO., LTD., | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................1

III.   PROCEDURAL HISTORY ...............................................................................3

IV.   LEGAL STANDARD ........................................................................................4

V.    ARGUMENT .....................................................................................................5

      A.    Defendants Failed To Show The Availability Of An Adequate Forum In China To Adjudicate The U.S. Patent Issues Pending Before This Court ..............5

      B.    Private Factors Favor Denying Defendants' Motion ...............................................10

      C.    Public Factors Favor Denying Defendants' Motion ................................................14

      D.    International Abstention Doctrine Does Not Apply Here.....................................16

      E.    Defendants Failed To Submit The Motion Timely.................................................19

VI.   CONCLUSION .................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*,
821 F.2d 1147 (5th Cir. 1987) ...................................................................... passim

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
504 F.3d 1236 (Fed. Cir. 2007)..................................................................................7

*Alpine View Co. v. Atlas Copco AB*,
205 F.3d 208 (5th Cir. 2000) .....................................................................................9

*Anderson-Tully Lumber Co. v. Int'l Forest Prod., S.r.L.*,
No. CIVA505CV68 DCB JCS, 2007 WL 2872413 (S.D. Miss. Sept. 26, 2007)....................17

*Argus Media Ltd. v. Tradition Fin. Servs. Inc.*,
No. 09 CIV. 7966 (HB), 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ...............................19

*Berger v. Columbia Broad. Sys., Inc.*,
453 F.2d 991 (5th Cir. 1972) ....................................................................................18

*Boushel v. Toro Co.*,
985 F.2d 406 (8th Cir. 1993) ...............................................................................17, 18

*Chateau Sch., Inc. v. Green Mountain Assocs. Inc.*,
No. CV 18-00030 LEK-KSC, 2019 WL 692794 (D. Haw. Feb. 19, 2019)............................18

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ................................................................................................16

*In re Compania Naviera Joanna S.A.*,
531 F. Supp. 2d 680 (D.S.C. 2007)..............................................................................9

*EFCO Corp. v. Aluma Sys., USA, Inc.*,
983 F. Supp. 816 (S.D. Iowa 1997) ...........................................................................18

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)............................................................................11

*Groeneveld Transp. Efficiency, Inc. v. Eisses*,
No. 7-cv-1298, 2007 WL 2769595 (N.D. Ohio Sept. 13, 2007) ...........................................17

*Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*,
816 F.3d 1366 (Fed. Cir. 2016)..........................................................................5, 6, 7, 8

*Huang v. Advanced Battery Techs., Inc.*,
2010 WL 2143669 (S.D.N.Y. May 26, 2010) ..................................................................9

*IntelliGender, LLC v. Soriano*,
    No. 2:10-CV-125-TJW, 2011 WL 903342 (E.D. Tex. Mar. 15, 2011) ..................................16

*International Business Machines Corporation v. LzLabs GmbH*,
    Case No. W-22-CV-00299-DAE, Dkt. 87 (W.D. Tex. Jan. 5, 2023) ("*IBM*")........................5

*Lu v. Air China Int'l Corp.*,
    1992 WL 453646 (E.D.N.Y. Dec. 16, 1992) ...........................................................................9

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*,
    No. C06-7541 PJH, 2007 WL 2403395 (N.D. Cal. Aug. 20, 2007)............................8, 14, 19

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
    575 F.2d 1152 (6th Cir. 1978) ...........................................................................10, 11, 12, 13

*Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*,
    356 F. App'x 675 (5th Cir. 2009) ...........................................................................................16

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)...........................................................................................................16, 17

*Riot Games, Inc. v. Shanghai Moonton Tech. Co.*,
    No. CV223107MWFJPRX, 2022 WL 17326150 (C.D. Cal. Nov. 8, 2022) ..........................15

*Rocha v. Metro. Life Ins.Co.*,
    No. 5-cv-60, 2006 WL 8434204 (W.D. Tex. Jan. 11, 2006) ....................................................16

*Saqui v. Pride Cent. Am., LLC*,
    595 F.3d 206 (5th Cir. 2010) ...................................................................................................9

*Sequihua v. Texaco, Inc.*,
    847 F. Supp. 61 (S.D.Tex. 1994) .............................................................................................9

*Societe Nationale D'Industries Nutritive S.A.E. v. Coca-Cola Co.*,
    No. 8-cv-3565, 2009 WL 10688837 (N.D. Ga. Feb. 6, 2009).................................................17

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) .........................................................................9

*Swissdigital USA Co., Ltd v. Wenger S.A.*,
    No. W21CV00453ADADTG, 2022 WL 1491348 (W.D. Tex. May 11, 2022) .....................12

*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*,
    796 F.2d 821 (5th Cir. 1986) ...................................................................................................9

*Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*,
    No. 18-CV-823 JLS (JLB), 2020 WL 998535 (S.D. Cal. Mar. 2, 2020)............................8, 19

*Tang v. Synutra Int'l, Inc.*,
    2010 WL 1375373 (D. Md. Mar. 29, 2010)..............................................................................9

*Tarazi v. Truehope Inc.*,
    958 F. Supp. 2d 428 (S.D.N.Y. 2013)...............................................................................17, 18

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
    No. 6:15-CV-00551 RC-JDL, 2016 WL 9245441 (E.D. Tex. Dec, 15, 2016).........................7

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................................2, 6

35 U.S.C. § 271(b) ...........................................................................................................2, 6

35 U.S.C. § 271(c) .............................................................................................................2

35 U.S.C. § 281...................................................................................................................9

Plaintiff Chongqing Qiulong Technology Corporation Limited, d/b/a Surron ("Plaintiff" or "Surron") respectfully provides this opposition to Defendants Talaria Power Tech's (Hong Kong) Co., Ltd. ("Talaria") and Tanli Power Technology's (Chongqing) Co., Ltd. ("Tanli") (collectively, "Defendants") Motion to Dismiss (Dkt. 57, "Motion").

## I.      INTRODUCTION

Plaintiff, Surron, which has over 80 distributors and dealers across the United States—including 7 dealers in Texas—asserts a U.S. patent to combat infringement activities occurring within U.S. territory, applying U.S. patent law.  While Defendants have admitted to conducting the accused activities in the U.S., they are now attempting to persuade the court to relinquish its jurisdiction and transfer the case to China based on forum non conveniens.  However, Defendants' forum non conveniens claim fails to meet any of the established criteria of the doctrine and essentially overlooks the territorial nature of patent rights, which are sanctioned by respective governments and are thus jurisdiction-specific.  Defendants' approach contravenes the well-established norms of the Federal Circuit, where courts consistently refuse to transfer patent cases based on forum non conveniens.  In addition, Defendants' arguments rely solely on hearsay allegations from their counsel, without providing any substantial evidence.  Thus, Defendants' motion to dismiss must be denied.

## II.      FACTUAL BACKGROUND

Plaintiff Surron, a renowned maker of dirt bikes, launched its flagship model, the Light Bee, in 2018. (Dkt. 1, "Compl." at ¶ 9).  This product not only won the Red Dot Design Award—an internationally recognized competition based in Essen, Germany—but it also forms the basis of the U.S. Patent asserted in this case, U.S. Patent No. D854,456 (the "'456 Patent").  Since its launch, the Light Bee has gained significant popularity across the U.S., supported by an exclusive distributor and a network of over 80 dealers in more than 30 states, including seven dealers in

Texas. (Declaration of Walt Lifsey ("Lifsey Decl.") at ¶¶ 2-4). Surron has further entrenched its presence in the American market by becoming the title sponsor of the leading dirt bike races and maintaining an ongoing advertising campaign in several top industry magazines.

Enter the Defendants, who are also engaged in the dirt bike industry. Notably, two of their principal shareholders were former employees of Surron. (Compl. at ¶¶ 16-21). After leaving Surron, these individuals acquired substantial stakes in the Defendant company and soon thereafter, Defendants launched Talaria Sting, a product strikingly similar to the Light Bee. (*Id.*) These former Surron employees, having had significant roles in marketing and sales at Surron, facilitated a partnership between Defendants and Surron's former U.S. distributor, Luna Cycle. Luna Cycle then began selling Defendants' infringing products throughout the U.S. (Lifsey Decl. at ¶¶ 6-7, Exhibit B).

Defendants have admitted in their answer to importing, marketing, and selling the accused products in the U.S. (Dkt. 27 at ¶ 25). This widespread infringement has adversely impacted the market for Surron's patented products. This is underscored by a public interview with the CEO of Luna Cycle, Eric Hicks, available on YouTube, where he explicitly acknowledged that Sting is a copy of Light Bee. (Lifsey Decl. at ¶¶ 8-9, Exhibit C).

Defendants' activities constitute a blatant infringement of Plaintiff's U.S. patent rights, including direct infringement under 35 U.S.C. § 271(a) through Defendants' admitted importation, marketing, and sales activities, as well as indirect infringement under 35 U.S.C. § 271(b) and 35 U.S.C. § 271(c) through downstream direct infringers like Luna Cycle. Given that these activities and their detrimental effects are focused on the U.S. territory, Surron has filed its complaint to assert its patent granted by the USPTO under U.S. Code, Title 35 and to seek damages for the infringement caused by Defendants' actions.

### III.    PROCEDURAL HISTORY

This case was filed over a year ago, on April 19, 2023.  (Dkt. 1).  Shortly after responding to the Complaint on September 26, 2023, Defendants filed for an *ex parte* reexamination of the patent in suit with the USPTO, attempting to challenge its validity. (Dkt. 29-2).  Subsequently, Defendants began to employ rhetorical strategies to suggest that the reexamination would likely invalidate the patent.  They used these assertions to justify their request for a stay of the current proceedings, claiming that the reexamination "presents a ***significant likelihood*** of materially simplifying the case and ***may entirely eliminate the issues for trial altogether***." (Dkt. 29 at 8). "Plaintiff's patent . . . ***may soon be invalidated***[.]"  (Dkt. 43 at 2).  "Defendants have established that [. . .] ***the very high*** likelihood that Plaintiff's patent could be ***invalidated***, thus rendering ***the viability*** of Plaintiff's claim ***dubious at best***[.]"  (Dkt. 48 at 2).  These statements, however, have proven to be highly misleading.  The USPTO, in its first office action, affirmed the validity of the patent and issued a certificate of reexamination without any rejections. (*See* Dkt. 51).

Plaintiff promptly provided the USPTO's findings to the Court.  (*Id.*)  However, despite the absence of any legitimate grounds for delay, Defendants continued to refuse to enter into a scheduling order, stalling the progression of the case. (Dkt. 59).  This obstruction necessitated a status conference scheduled for April 29, 2024.  On the eve of this conference, Defendants abruptly filed a motion to dismiss and a motion to stay the proceedings based on the doctrine of forum non conveniens, asking the Court to relinquish jurisdiction of this U.S. patent dispute due to a parallel patent case in China. (Dkts. 57-58).

As analyzed below, Defendants' motion to dismiss fails to satisfy any elements of the forum non conveniens or international abstention doctrines.  The motion is solely based on unsubstantiated statements from their legal counsel.  Consequently, this motion must be denied.

## IV.    LEGAL STANDARD

"A defendant of course bears the burden of invoking the [forum non conveniens] doctrine and moving to dismiss in favor of a foreign forum. . . . This burden of persuasion runs to all the elements of the forum non conveniens analysis.  Therefore, the moving defendant must establish that an adequate and available forum exists as to all defendants[.]"  *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164-65 (5th Cir. 1987).

Here, the availability and adequacy of a foreign forum is the governing issue. However, assuming for the sake of argument, "[i]f the moving defendant meets this initial burden, they must also establish that both private and public interests heavily favor a trial in the foreign forum." *Air Crash*, 821 F.2d at 1164.

"The private interests to be considered are 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.'" *Air Crash*, 821 F.2d at 1162 (citation omitted).

"The public interest factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Air Crash*, 821 F.2d at 1162-63.

## V.      ARGUMENT

### A.      Defendants Failed To Show The Availability Of An Adequate Forum In China To Adjudicate The U.S. Patent Issues Pending Before This Court

As the Federal Circuit cautioned, "*[t]he policies underlying United States copyright, patent, and trademark laws would be defeated* if a domestic forum to adjudicate the rights they convey was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction. It is largely for this reason that *district courts have routinely denied motions to dismiss on forum non conveniens grounds when United States intellectual property rights form the crux of the dispute*." *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1373 (Fed. Cir. 2016) ("*Halo*") (emphasis added).  In *Halo*, "[the plaintiff's] complaint seeks redress for alleged infringement of its United States intellectual property rights that occurred in the United States." *Id.* at 1371.  Although the Federal Circuit acknowledged that "[the plaintiff] is 'entitled to all of the protections offered by Canadian [copyright] law to Canadian citizens[,]'" it nonetheless declined to dismiss the case on the grounds of forum non conveniens. *Id.* The Federal Circuit reasoned that Canadian law does not "provide remedies for extraterritorial infringing activity" or "apply its law extraterritorially." *Id.* Indeed, "[t]erritoriality is always of concern in intellectual property disputes," and "the [] *patent laws* of the United States certainly reflect such territoriality." *Id.*

Recently, the Western District of Texas also rejected a similar motion to dismiss a patent case on the grounds of forum non conveniens.  In *International Business Machines Corporation v. LzLabs GmbH*, the plaintiff, IBM, brought an action of patent infringement against the defendants. Case No. W-22-CV-00299-DAE, Dkt. 87 (W.D. Tex. Jan. 5, 2023) ("*IBM*").  The defendants sought dismissal, claiming that the case should be adjudicated by an English court instead. *Id.*  The Court began its analysis by citing a well-established standard set by the Supreme Court, which states that "dismissal [under forum non convenience] would not be appropriate where

the alternative forum does not permit litigation of the subjection matter of the dispute." *Id.* at 4. The Court then determined that "Plaintiff's claims arise under the laws of the United States, not the laws of England. This Court is unaware, and Defendants have not proffered, any case law or authority supporting the notion that the English courts would (or even could) exercise jurisdiction over Plaintiff's claims arising under U.S. laws. As such, the Court concludes that the English courts would not constitute an adequate alternative forum." *Id.*

The present case is similar to *Halo* and *IBM* in that Plaintiff is asserting a U.S. patent under U.S. law, including 35 U.S.C. §§ 271, 281, 284, and 289, to address Defendants' infringing activities within the U.S. Specifically, there are at least three key aspects that center the case squarely in the U.S.: ***First***, the direct infringement by Defendants occurs in the U.S. The Defendants themselves acknowledged in their Answer that they "have been marketing, importing, and selling the [accused] 'Talaria Sting Electric Bike – DNM,' 'Talaria Sting Electric Bike – Fastace Forks,' and 'Talaria Sting Electric Bike – Factory Fork' ***in the United States***." (Dkt. 27 at ¶ 25 (emphasis added)). Accordingly, these activities clearly fall under the activities prohibited by 35 U.S.C. § 271(a), which states: "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

***Second***, Defendants induce U.S. distributors and dealers to infringe Plaintiff's patent, with the direct infringement by these distributors and dealers occurring within the U.S. For instance, Defendants' main distributor, Luna Cycle, who also distributed for Plaintiff, is based in California. (Lifsey Decl. at ¶ 6, Exhibit A). Its direct infringement activities—importing, selling, and offering to sell—are all targeted at U.S. customers. *Id.* Such inducement actions by Defendants fall under the scope of 35 U.S.C. § 271(b): "Whoever actively induces infringement of a patent shall be liable as an infringer."

**Third**, the subject matter protected by the U.S. patent differs from that protected by the Chinese patent. In patent law, "the claims represent 'the subject matter which the applicant regards as his invention[.]'" *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007). The claim of the U.S. patent is shown in its drawings with both solid and broken lines, where "[t]he broken lines in the drawings illustrate portions . . . that **form no part of the claimed design**." (Dkt. 1-1 at 2, '456 Patent at (57) (emphasis added). In contrast, the Chinese patent does not incorporate broken lines. (Dkt. 57-6 at 6-9). This difference highlights that the subject matter of the U.S. case differs from that of the Chinese case. Even if the Court were to consider Chinese and U.S. courts as interchangeable, which they are not, the Chinese action should not substitute for the present case because the subject matters are different. *See Halo* at 1370 ("It is clear after *Piper Aircraft* that an alternative forum is not adequate unless it 'permit[s] litigation of the **subject matter** of the dispute.'") (emphasis added).[1]

The remaining evidence offered by Defendants in their Motion suffers from the same critical weakness as the evidence in *Halo*. For instance, referencing a declaration from their Chinese counsel, Defendants argued that "China has a robust legal system that recognizes and protects intellectual property rights, including the rights of those who own patents[;]" "[i]f a patent owner's rights are infringed upon, it may be entitled to various remedies including, but not limited

---

[1] Defendants' counsel, Mr. Ou, declared that "a comparison of the drawings filed in the '456 Design Patent application with the drawings filed in the patent application for Chinese Patent No. 201730077820.5 makes it clear that in each case the claimed invention in the design for the Light Electric Off-Road Motorcycle are based on the same drawings." (Dkt. 57-3 at ¶ 9). However, this statement ignores the broken lines in the U.S. patent. Furthermore, Mr. Ou has not substantiated his qualifications to opine on the patent's subject matter or the associated patent procedures. He failed to provide any credentials in patent law or relevant industry experience. *See Tinnus Enterprises, LLC v. Telebrands Corp.,* No. 6:15-CV-00551 RC-JDL, 2016 WL 9245441, at *4 (E.D. Tex. Dec. 15, 2016), report and recommendation adopted, 2017 WL 3404795 (E.D. Tex. Aug. 8, 2017) (excluding expert testimony because the expert had no industrial experience).

to, damages and injunctive relief[;]" "in the China Action, Plaintiff and Tanli have already litigated this case on the merits after full fact and expert discovery and are currently awaiting the Chinese court's decision."  (Motion at 3).  However, this mirrors the evidence that the Federal Circuit deemed insufficient in *Halo*, where such evidence "demonstrates nothing more than the unremarkable proposition that the [Chinese court] has jurisdiction over [Chinese] intellectual property disputes." *Halo* at 1370.

The relationship between the two Defendants and their willingness to submit to Chinese courts' jurisdiction are also irrelevant.  It is based on the untenable assumption that Chinese courts could adjudicate U.S. patents by applying U.S. law, for which there is no supporting evidence. Defendants further claim that "should Plaintiff file an infringement action against Defendants in China based on ***any alleged infringement of the '456 Design Patent***, Defendants would not contest service."  (Dkt. 57-3 at ¶ 14).  Notably, the full number of the '456 Patent mentioned here is U.S. Patent No. D854,456, which is the patent in suit issued by the USPTO.  Defense counsel incorporated this U.S. patent into his declaration without any authoritative basis suggesting that a Chinese court would ever enforce this patent issued by the U.S. Patent Office.  In fact, several U.S. courts have recognized that Chinese patent law is also territorial in nature, similar to U.S. patent law.  *See Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.,* No. 18-CV-823 JLS (JLB), 2020 WL 998535, at *4 (S.D. Cal. Mar. 2, 2020) ("In any event, Plaintiff is correct that patents are territorial, . . . accordingly, Plaintiff could not have pursued its claims under the U.S. Patents in the Chinese Action."); s*ee also Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, No. C06-7541 PJH, 2007 WL 2403395, at *8 (N.D. Cal. Aug. 20, 2007) ("[The defendant] does not offer any proof as to the existence of the . . . patent laws in China which would provide the plaintiff a sufficient remedy for his wrong.").

Another critical flaw in Defendants' evidence is its failure to demonstrate any connection between the accused activities in China and those in the U.S.  Defendants simply note that Plaintiff has alleged infringement based on using, selling (including exporting), and offering to sell infringing products in the Chinese action.  However, they have not provided any evidence linking the infringing products in China to those in the U.S.  Even if there is an overlap in the infringing products, the acts of infringement themselves remain distinct.  For infringing acts occurring in the U.S., remedy must be granted under 35 U.S.C. § 281: "A patentee **shall have remedy** by civil action for infringement of his patent."  (emphasis added).  The imperative term "shall" in this context underscores the obligation of U.S. courts to adjudicate these matters, rather than dismissing them based on forum non conveniens.  Dismissing a case on these grounds and relying on a foreign court to resolve a U.S. patent infringement issue is problematic because there is no guarantee or mechanism ensuring that a foreign court will enforce U.S. patent laws or adhere to the same standards.  Therefore, reliance on forum non conveniens to dismiss patent infringement actions contradicts the statutory requirement that U.S. courts "shall" provide a remedy and potentially leaves the patentee without the legal recourse expressly provided by U.S. patent law.

The cases relied on by Defendants are distinguishable.  The issues there include injury and death from accidents, *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010); *Lu v. Air China Int'l Corp.*, 1992 WL 453646, (E.D.N.Y. Dec. 16, 1992); breach of contract, *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821 (5th Cir. 1986); *Huang v. Advanced Battery Techs., Inc.*, 2010 WL 2143669 (S.D.N.Y. May 26, 2010); pollution liability, *Sequihua v. Texaco, Inc.*, 847 F. Supp. 61 (S.D.Tex. 1994); product liability, *Tang v. Synutra Int'l, Inc.*, 2010 WL 1375373 (D. Md. Mar. 29, 2010); boat collision, *In re Compania Naviera Joanna S.A.*, 531 F. Supp. 2d 680 (D.S.C. 2007); and trade secret misappropriation, *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596

(C.D. Cal. Jan. 17, 2020).  Unlike patent cases, where rights are distinctly tied to territorial grants from specific governments, the issues in these cases revolve around universally recognized legal principles, such as the duty of care, contractual obligations, environmental stewardship, consumer safety, and the protection of confidential business information.  Therefore, finding an adequate alternative jurisdiction is more feasible due to the universally applicable nature of these cases.  However, this very nature sets them apart from patent cases, which involve the enforcement of territorially bound rights.

Thus, because there is no "authority supporting the notion that the [Chinese] courts would (or even could) exercise jurisdiction over Plaintiff's [patent] claims arising under U.S. laws[,] the [Chinese] courts would not constitute an adequate alternative forum." *IBM* at 4.

## B.  Private Factors Favor Denying Defendants' Motion

Since there is no adequate forum in China, "the Court need not consider the balance of the relevant private and public interest factors." *IBM* at 4.  Nonetheless, even if these factors were considered for the sake of argument, they would favor denying the motion to dismiss.

### 1.  *The relative ease of access to sources of proof*

Much of the key evidence in this case is in the possession of Plaintiff's exclusive distributor, Fetch Light Inc., located in Colorado, USA.  Fetch Light retains various documents that demonstrate Plaintiff's marketing capabilities, such as contracts with over 80 dealers nationwide, promotional materials, sales records, marketing strategies, and registrations with US government agencies.  (Lifsey Decl. at ¶¶ 2-4)  *See Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978) ("To obtain as damages the profits on sales he would have made absent the infringement, i. e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he

would have made."); *see also  Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (providing a list of non-exhaustive factors relevant to calculating damages for a reasonable royalty analysis including: "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity," "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use, and "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions," among others.)  All these documents are situated in the US, making them more accessible to this Court than to courts in China.

On the other hand, Defendants allege that "the majority of documents are in Mandarin Chinese. . . . The documents would need to be translated. . . . This would result in costs likely exceeding $34,000-$221,000."  (Dkt. 57-3 at ¶ 16).  This claim is flawed in several respects. First, Defendants have not specified which documents they are referring to, nor have they demonstrated their relevance to the claims or defenses.  The estimated translation costs, according to their lawyer, are based on the allegation that "Plaintiff and Tanli submitted at least 1,700 pages of trial exhibits to the Chinese court, which would cost approximately $34,000 to $221,000 to translate at the rates listed above."  *Id.*  However, this does not establish the relevance of these documents to the U.S. case. Moreover, this assertion is made by Defendants' U.S. counsel, who has not shown that he possesses any personal knowledge about the Chinese lawsuit.  Therefore, this testimony is insufficient.  FRE 602.

### 2.    *The cost of attendance for willing witnesses*

One of Plaintiff's key witness is Walt Lifsey, the CEO of Plaintiff's exclusive distributor, who resides in Colorado, USA.  Mr. Lifsey is prepared to testify regarding the U.S. demand for Plaintiff's product. (*See* Lifsey Decl. at ¶¶ 3-4),*See Panduit*, 575 F.2d 1152 (Holding that "demand

for the patented product" must be proven by Plaintiff to obtain lost profits.)  He will also discuss his company's marketing capabilities, including its relationship with all dealers across the U.S., operations in more than 30 states—including Texas, which has 7 dealers—as well as Plaintiff's sponsorship of dirt bike races and advertising campaigns in leading industrial magazines.  (*See* Lifsey Decl. at ¶¶ 3-4), *See Panduit*, 575 F.2d 1152 (Holding that "manufacturing and marketing capability to exploit the demand" must be proven by Plaintiff to obtain lost profits.).  Additionally, Mr. Lifsey will provide testimony on the sales and commercial success of Plaintiff's patented products.  (*See* Lifsey Decl. at ¶¶ 3-4), *Georgia-Pacific*, 318 F. Supp. 1120 (Holding that "the established profitability of the product made under the patent; its commercial success; and its current popularity" is a relevant factor for determining a reasonable royalty rate).

Considering the geographical distances, the cost of Mr. Lifsey attending the trial in Texas is significantly less than traveling to China.  (*See* Lifsey Decl. at ¶ 5).  Similarly, for other Plaintiff's U.S.-based dealers who possess relevant information and are willing to testify, the cost of attending the trial in Texas is substantially lower than traveling to China.

Defendants primarily based their arguments on the translation, travel visas, airline tickets, lodging, and meals for witnesses, (Dkt. 57-3 at ¶¶ 15-19) yet Defendants fails to identify these individuals or explain how their testimony would be relevant to the case.  Such conclusory assertions should be given no weight.  *Swissdigital USA Co., Ltd v. Wenger S.A.*, No. W21CV00453ADADTG, 2022 WL 1491348, at *2 (W.D. Tex. May 11, 2022) (refusing to grant weight to defendant's conclusory assertions regarding Group III's witnesses when defendants failed to identify their identities, relevant documents, or testimony.).

> 3. *The availability of compulsory process to secure the attendance of unwilling witnesses*

An essential witness who may be unwilling is Eric Hicks, the CEO of Defendants' current distributor.  (*See* Lifsey Decl. at ¶¶ 6-9, Exhibits A-C).  His testimony is critical for several reasons:

it can provide insights into the market demand for Defendants' products, their competition with Plaintiff's products in the U.S., detailed U.S. sales information and pricing, and the identities of downstream dealers. *See Panduit*, 575 F.2d 1152 (Holding that "demand for the patented product" and "manufacturing and marketing capability to exploit the demand" must be proven by Plaintiff to obtain lost profits.). Furthermore, his testimony is relevant to the issue of willful infringement, as he has previously stated in an interview that Defendants' products are copycats of the plaintiff's. (*See* Lifsey Decl. at ¶¶ 8-9, Exhibits B and C). Hicks resides in California, where his company is also based. (*See* Lifsey Decl. at ¶ 6, Exhibit A). While a Chinese court would not have the authority to compel his testimony or production of documents, this Court would possess this power under Federal Rules of Civil Procedure Rule 45. In addition, to the extent Defendants have any other dealers in the US, this Court would have the same power under Rule 45 to compel their testimonies as well.

Defendants conclusively state that "to the extent that any witnesses refused to appear, it is unlikely that this Court would be able to compel the testimony of said unwilling witnesses." (Motion at 9). Once again, Defendants have not identified these witnesses, nor have they provided any explanation as to why these individuals might be unwilling or why this Court would be unable to compel their testimony. Therefore, this statement should be given no weight.

4.    *Other practical problems that make trial of a case easy, expeditious and inexpensive*

Another reason for the Court to retain this case is that it already benefits from the insights of the USPTO reexamination results. Indeed, Defendants themselves have acknowledged in their first motion to stay that:

> [e]ven if Plaintiff's design patent claim is not invalidated, staying this litigation would allow this Court to benefit from the expertise of the PTO. (citing *Polaris*, 2023 WL 5282381, at *3 ('[T]he district court's Markman process would be simplified by any claim construction or other analysis conducted by the PTO.'); *Anza Tech., Inc.*, 2018 WL 11314191, at *2 ('If . . .

13

> the PTAB determines to initiate inter partes review of [Plaintiff's] patent[s], and if some of the asserted claims survive that review, then statements and reasoning by the PTAB may be persuasive as this court construes the parties' disputed claim terms. The court concludes that whatever occurs at the PTAB will potentially be helpful to the court in construing the parties' disputed claim terms.')

(Dkt. 29 at 8).  Thus, all private factors favor denying Defendant's motion to dismiss.

### C.   **Public Factors Favor Denying Defendants' Motion**

#### 1.   *The administrative difficulties flowing from court congestion*

In addressing court congestion, Defendants allege that "the China Action is unquestionably much further along than the U.S. Action … and a full hearing on the merits was held in China on January 15 and 26, 2024." (Motion at 3).  However, according to declarations from Defendants' Chinese counsel, although "[a] decision on the merits [of the Chinese case] is expected before the end of May, 2024[,] the parties may appeal to such decision."  (Dkt. 57-2 at ¶ 15).  This indicates that the timeline for a final judgment in the Chinese court is much uncertain due to the appeal, which discredits Defendants' argument that the China action will conclude earlier than the U.S. action.  *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, 2007 WL 2403395, at *10 (N.D. Cal. Aug. 20, 2007) ("nor is evidence proffered that the proposed alternative forum is less congested").

#### 2.   *The local interest in having localized controversies decided at home*

Texas has a significant local interest in this matter. As previously noted, Plaintiff has seven dealers in Texas who are facing competition from Defendants' infringing products.  (Lifsey Decl. at ¶¶ 3-4).  The sales of this type of dirt bike is highly regulated.  To operate in Texas, both Plaintiff's distributor and its dealers must obtain specific licenses and entail considerable entry costs.  (Lifsey Decl. at ¶¶ 10-11, Exhibit D).  Therefore, safeguarding their investment by halting the sale of competing, infringing products represents an important local interest that warrants adjudication in this Court.

3. *The familiarity of the forum with the law that will govern the case*

By retaining this case, the Court here will apply U.S. patent law. However, dismissing this case and allowing a Chinese court to take over would effectively require the Chinese court to apply U.S. law to enforce a U.S. patent. Undoubtedly, this Court is more familiar with U.S. law than a Chinese court.

4. *The avoidance of unnecessary problems of conflict of laws or the application of foreign law*

Similar to the previous point, adjudicating the matter here would exclusively involve U.S. law, thereby avoiding unnecessary issues related to conflicts of law or the application of foreign law. Conversely, allowing a Chinese court to handle this case would introduce such complications.

The *Riot* case cited by the defendants does not apply here because in that instance, the copyright owner plaintiff in China took a different position than the copyright owner plaintiff in the U.S. with regard to the same copyrighted work. *Riot Games, Inc. v. Shanghai Moonton Tech. Co.*, No. CV223107MWFJPRX, 2022 WL 17326150, at *15 (C.D. Cal. Nov. 8, 2022). Moreover, the copyright owner in China refused to join the U.S. litigation, which the court held was the dispositive factor in granting dismissal. *Id.* at *2 ("[Chinese copyright holder] agreement to tangentially participate in this action falls short of simply joining the action as a co-plaintiff or at least agreeing to be subject to this Court's subpoena power, **either of which would fatally undermine Moonton's FNC arguments**." (emphasis added). Here, there is no separate Chinese patent holder that refuses to join the litigation. Plaintiff holds both a United States and Chinese patent and has chosen to enforce them both and agrees to be subject to this Court's subpoena power.

5. *The unfairness of burdening citizens in an unrelated forum with jury duty*

Given the sufficient local interest in Texas as previously discussed, adjudicating this case here would not unfairly burden its citizens.

15

### D.   International Abstention Doctrine Does Not Apply Here

Defendants do not carry their heavy burden to show that this case should be dismissed pursuant to the doctrine of international abstention. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) ("The doctrine of abstention… is an **extraordinary and narrow exception** to the duty of a District Court to adjudicate a controversy… [and] can be justified … only in **exceptional circumstances**.") (emphasis added).  Critically, the Supreme Court has cautioned that in an action for damages, as here, the proper vehicle for seeking dismissal is forum non conveniens, not the international abstention doctrine. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) ("Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles **only where the relief being sought is equitable** or otherwise discretionary.") (emphasis added).  Thus, dismissal of the current action under this doctrine is misplaced.  *Id.* at 719  ("[W]e have applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether.")[2]

The cases cited by Defendants do not advance their position. *Rocha v. Metro. Life Ins.Co.*, No. 5-cv-60, 2006 WL 8434204 (W.D. Tex. Jan. 11, 2006); *Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675, 681 (5th Cir. 2009); and *IntelliGender, LLC v. Soriano*, No. 2:10-CV-125-TJW, 2011 WL 903342 (E.D. Tex. Mar. 15, 2011).  **First**, in all three of these cases, the relief requested through the international abstention doctrine was denied.  **Second**, in all three cases the corresponding foreign suit was filed before the U.S. action at issue. And **third**, none of these cases involve territorial patent rights. Defendants further rely on *Anderson-Tully Lumber Co. v. Int'l Forest Prod., S.r.L.*, No. CIVA505CV68 DCB

---

[2] Plaintiff addresses why this case should not be stayed in its Opposition to Defendants' Motion to Stay, which is filed concurrently with this opposition.

JCS, 2007 WL 2872413, at *6 (S.D. Miss. Sept. 26, 2007), which dismissed the case based on forum non conveniens before buttressing its grounds for dismissal with the international abstention doctrine.  As stated above, the proper vehicle for seeking dismissal of a domestic action "at law" in view of a contemporaneous foreign action is the doctrine of foreign non conveniens.  To the extent that Defendants argue that international abstention is a wholly separate ground for dismissal, *Anderson-Tully* does not support that.

Thus, there is no basis to consider dismissal of this case independently based on the doctrine of international abstention.  Indeed, denying Defendants' motion on the grounds of forum non conveniens disposes of the issue entirely. *Quackenbush*, 517 U.S. at 721 ("Though we deal here with our abstention doctrines, we have recognized that federal courts have discretion to dismiss damages actions, in certain narrow circumstances, under the common-law doctrine of forum non conveniens.").  Nevertheless, should the Court consider factors traditionally applied to the international abstention doctrine, Defendants' Motion should still be denied.

### 1. *The parties and issues are different*

First, the parties are different in the two actions. Defendants admit that one of the two Defendants in this action, Talaria, is not named in the Chinese action.  (Motion at 12). To overcome this fatal hurdle, Defendants string together case law standing for the unremarkable proposition that a parent-subsidiary relationship establishes that two parties are similar.  *Boushel v. Toro Co.*, 985 F.2d 406 (8th Cir. 1993); *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428 (S.D.N.Y. 2013); *Societe Nationale D'Industries Nutritive S.A.E. v. Coca-Cola Co.*, No. 8-cv-3565, 2009 WL 10688837 (N.D. Ga. Feb. 6, 2009); *Groeneveld Transp. Efficiency, Inc. v. Eisses*, No. 7-cv-1298, 2007 WL 2769595, at *2 (N.D. Ohio Sept. 13, 2007), *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F. Supp. 816 (S.D. Iowa 1997).  **First**, all of these cases were decided in the context of a stay, not a dismissal.  Thus, the courts were more lenient with respect to the similarity of the parties. *See*

*e.g., Boushel*, 985 F.2d at 408 ("the district court also recognized that the Quebec action might not conclusively resolve all the Boushel interests' claims against [the different named parties], which is why it specifically left the door open for further litigation in the federal court."); *Tarazi*, 958 F. Supp. at 434 ("Nor will the interests of [the different named parties] be left unprotected, as the defendants have not asked that this case be dismissed, but merely stayed."); *EFCO*, 983 F. Supp at 824 ("As to concerns about the named parties or any other concerns, the court notes that it is merely ordering a stay and is not dismissing the plaintiffs action.").   Here, Defendants seek an outright dismissal based on the abstention doctrine.  The leniencies that the courts provided in the context of a stay are not applicable here, where one of the two Defendants in this action is not named in the foreign action.  **Second**, Talaria "ha[ving] two shareholders who own 37% of Tanli" (Dkt. 57-3 at ¶ 13) is insufficient to establish a parent-subsidiary relationship or that the parties are similar enough for the purposes of the international abstention doctrine.  *See Berger v. Columbia Broad. Sys., Inc.*, 453 F.2d 991, 995 (5th Cir. 1972) ("In our opinion complete stock ownership, common officers and directors, and the use of organizational charts illustrating lines of authority are all business practices common to most parent-subsidiary relationships.")

More importantly, the issues are different in this dispute. As described *supra* in Section V(A), the patents, their corresponding subject matter, and the application of their respective territoriality in China and the United States could lead a fact finder to different conclusions when determining liability.  Defendants yet again rely on cases that ***stayed*** an action and also did not implicate territorial patent rights. *Chateau Sch., Inc. v. Green Mountain Assocs. Inc.*, No. CV 18-

00030 LEK-KSC, 2019 WL 692794 (D. Haw. Feb. 19, 2019)[3]; *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09 CIV. 7966 (HB), 2009 WL 5125113  (S.D.N.Y. Dec. 29, 2009).

At bottom, it is unclear—and Defendants do not explain—how a judgment in the Chinese action would affect this action.  Because the parties and issues are different here, there is no ground to dismiss (or stay) this action.

2.    <u>The remaining factors weigh in favor of denying Defendants' Motion</u>

The remaining factors do not weigh in favor of dismissing this case.  As discussed supra in Section V(B), Defendants have not proffered the identity of their witnesses, where they are located, or the relevance of their testimony.  Defendants' conclusory arguments supported by their attorneys' declaration should not be afforded weight.  In stark contrast, Plaintiff has submitted a declaration outlining domestic-based evidence it seeks and maintains. (Lifsey Decl. at ¶¶ 2-11).

Moreover, an order dismissing this case would cause Plaintiff prejudice in its inability to enforce its U.S. Patent to prevent infringement in the U.S.  As discussed supra in Section V(A), the scope of Plaintiff's U.S. Patent is broader than its Chinese patent.  Dismissing this case would render Plaintiff's U.S. patent meaningless towards these Defendants and other potential Chinese infringers.  *Talavera Hair,* 2020 WL 998535 at *4; *Mintel Learning*, 2007 WL 2403395 at *8.

**E.    Defendants Failed To Submit The Motion Timely**

A final, independent reason to deny Defendants' Motion is their untimeliness in filing.  The Fifth Circuit has held that "a defendant must assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed" and that untimeliness "should weigh heavily against the granting of the motion."

---

[3] While *Chateau Schools* dealt with territorial trademark rights, it was plaintiff who moved to stay the case after plaintiff initiated the foreign action because defendants were not participating in the U.S. action. 2019 WL 692794 at *2. Defendants did not oppose the motion to stay the U.S. action. *Id.*

*Air Crash*, 821 F.2d at 1165.   Here, Defendants were aware that the Chinese case was filed in October, 2023. (Dkt. 61 at 8).   At that time, Defendants' motion to stay based on the Ex Parte Reexamination had not yet been granted, and they had the opportunity to file this motion to dismiss back then.   However, Defendants failed to do so until the eve of the status conference. (Dkt. 57). This delay, compounded by the initial motion to stay, is rooted in baseless arguments and prejudices Plaintiff, particularly because Plaintiff sought injunctive relief (Compl. at 15), which will be further delayed by a postponed trial.   Therefore, this factor supports denying Defendants' motion.

**VI.     CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

DATED: May 13, 2024

Respectfully submitted,

By: *s/ Ziyong Li*

Robert ("Robby") P. Earle
Texas Bar No. 24124566
rearle@scottdoug.com
Stephen L. Burbank
State Bar No. 24109672
sburbank@scottdoug.com
SCOTT DOUGLASS &
McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701-2589
(512) 495-6300 (telephone)
(512) 495-6399 (fax)

Ziyong ("Sean") Li
California Bar No. 289696
sli@beneschlaw.com
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 78701-2589
(628) 600-2250 (telephone)
(628) 221-5828 (fax)

Louis Constantinou
Illinois Bar No. 6332571
lconstantinou@beneschlaw.com
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
(312) 212-4949 (telephone)
(312) 767-9192 (fax)

*COUNSEL FOR PLAINTIFF CHONGQING
QIULONG TECHNOLOGY
CORPORATION LIMITED, DBA SURRON*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 13, 2024, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas by using the CM/ECF system.

*/s/ Ziyong Li*
Ziyong Li
