ARCHER & GREINER, P.C.
3040 Post Oak Blvd, Suite 1800-150
Houston Texas 77056
Phone: (713) 970-1066
Fax: (713) 583-9518
*Attorneys for Defendants Talaria Power Tech (HongKong) Co., Ltd.*
*and Tanli Power Technology (Chongqing) Co., Ltd.*

By: Jiangang Ou, Esquire (No. 24127006, jou@archerlaw.com)
    Bruce M. Gorman, Jr., Esquire (admitted *pro hac vice*, bgorman@archerlaw.com)
    Tanneika A. Minott, Esquire (admitted *pro hac vice*, tminott@archerlaw.com)

| | |
|---|---|
| CHONGQING QIULONG TECHNOLOGY CORPORATION LIMITED DBA SURRON,<br><br>Plaintiff,<br><br>v.<br><br>TANLI POWER TECHNOLOGY (CHONGQING) CO., LTD and TALARIA POWER TECH (HONGKONG) CO., LTD,<br><br>Defendants. | UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS AUSTIN DIVISION<br><br><br>No. 1:23-CV-442-RP |

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, Talaria Power Tech (HongKong) Co., Ltd. ("Talaria") and Tanli Power Technology (Chongqing) Co., Ltd. ("Tanli") (collectively, "Defendants"), by and through their attorneys, hereby file this reply brief in further support of their Motion to Dismiss, and in support thereof, state as follows:

## I.   <u>INTRODUCTION</u>

In its opposition brief, Plaintiff does its best to ignore the undeniable fact that this is a dispute solely between Chinese companies, concerning products that are only manufactured in China, and that is already being litigated in China.  Plaintiff does not challenge the competence of the Chinese tribunal where it chose to file the China Action; nor does it contest that a decision on the merits is imminent.  Instead, Plaintiff attempts a few misdirections.

In resisting dismissal under the doctrine of *forum non conveniens*, Plaintiff chiefly claims—incredibly—that the Chinese court in which it filed the China Action is not adequate to hear the very infringement claim that it is currently seeking relief for in China, as well as here.  Asking this Court to ignore the inherent contradictions in its position, Plaintiff fails to reconcile the proverbial elephant in the room: namely, if the Chinese tribunal is so inadequate to stop the alleged infringement of its design and obtain relief, then why did Plaintiff file suit there?

Plaintiff's sole recourse is to argue form over substance—specifically, that the Plaintiff should be entitled to enforce the U.S. patent certificate (emphasizing the patent rather than what the patent protects, i.e., the design), even though the design it seeks to protect is fully covered and protected by its China patent.  Backpedaling quickly, Plaintiff bravely argues that, in effect, the doctrine of *forum non conveniens* can never apply to a patent action (the law does not support this); that the key evidence really concerns Defendants' U.S. sales information (which is belied by Plaintiff's own discovery requests); the key witnesses are the parties' U.S. dealers (none of whom have been shown to be competent to testify regarding the central issue of infringement); and that,

perhaps most puzzling of all, there is no "evidence" that the documents concerning the designs at issue and alleged infringement that the parties submitted in the China Action (which Plaintiff does not contest are all in Mandarin Chinese) are "relevant". Plaintiff's arguments are not only implausible on their face, they also do not stand up to either the case law or even a cursory review of Plaintiff's own contradictory actions.

At the end of the day, this is a case that belongs in China. Plaintiff's strategic decision to file the China Action and pursue relief for its design in China estops Plaintiff from now challenging the adequacy of China as the proper and logical forum for resolution of this dispute. Defendants' motion to dismiss should therefore be granted.

## II.   ARGUMENT

> A.   Plaintiff Has Failed To Reconcile The Inconsistency of Claiming That China Is An Inadequate Forum While Simultaneously Deciding To File Suit There

In its effort to evade the doctrine of *forum non conveniens*, Plaintiff argues that (1) the doctrine of *forum non conveniens* essentially can never apply in a U.S. patent case; (2) China is not an adequate forum; (3) the U.S. patent and China patent are "not interchangeable"; and (4) this case is really about U.S. dealers, rather than the designs at issue and the alleged infringement. Each argument is without merit.

> 1.   The Law Does Not Support Plaintiff's Contention That *Forum Non Conveniens* Essentially Does Not Apply in Patent Cases

Plaintiff argues that, because U.S. patent rights are "territorial [in] nature", dismissing this case on the basis of *forum non conveniens* would "contravene[] the well-established norms of the Federal Circuit, where courts consistently refuse to transfer patent cases based on forum non conveniens." [Dkt. No. 64 at pg. 6.] In support, Plaintiff cites not to a to well-established line of cases (as one might expect), but rather (1) dicta from a 2014 Federal Circuit case Halo Creative & Design Ltd. v. Comptoir Des Indes Inc., 816 F.3d 1366, 1373 (Fed. Cir. 2016) ("Halo"), and (2)

an unpublished Western District of Texas case that is so unpublished that it cannot even be found on Westlaw.[1]  Neither case supports Plaintiff's bold proposition.

In Halo, the plaintiff, a Hong Kong company, sued defendants, who were residents of Canada, in the Northern District of Illinois, alleging infringement of 23 of Halo's copyrights and two (2) of its design patents.  816 F.3d at 1368.[2]  The defendants moved to dismiss on the basis of *forum non conveniens*, arguing that Canada was a far superior forum, and the district court granted the motion.

In reversing the district court's dismissal based on *forum non conveniens*, the Halo court placed particular emphasis for its reasoning on the almost complete lack of connection between the underlying dispute, and the proposed alternate forum of Canada.  The court stated:

> There is no evidence in the record that any of the alleged infringement occurred in Canada.  There is no evidence that appellees' furniture is designed in Canada, or that the allegedly infringing furniture was shipped through Canada to the United States after manufacture in Asia.  **It is undisputed that the only evidence of any connection to Canada in the record is that appellees have their principal place of business there.  But this fact alone cannot suffice**.

Id. at 1372 (emphasis added).[3]

Here, by contrast, all of these connections with China are present.  Both Plaintiff and Defendants are Chinese companies, with their operations based in China.  [Dkt. No. 1 at ¶¶ 5-7, 10 (Plaintiff's Complaint notes that the parties are organized and exist under the laws of China and the Hong Kong SAR, China, and also that "Plaintiff's operations are based in Chongqing, China and Hangzhou, China.").]  All of Defendants' products are manufactured in China, where all of

---

[1] International Business Machines Corp. v. LzLabs Gmbh, Civil No. 6:22-CV-00299-ADA (W.D. Tex. Jan 5, 2023) ("IBM").

[2] The defendants' arguments on appeal focused on copyright law, not patent law.  Id. at 1370.

[3] The Halo court was also not impressed that "the only evidence appellees submitted to the district court was a printout of a webpage from the site of the Federal Court of Canada, simply showing ... the unremarkable proposition that the Federal Court of Canada has jurisdiction over Canadian intellectual property disputes."  Id. at 1372.

Defendants' management and employees work and reside.  [Certification of Fan Wang on behalf of Tanli at ¶¶ 3-5; Certification of Fan Wang on behalf of Talaria at ¶¶ 3-4.]  Indeed, the parties are already litigating the alleged design infringement there.  The connection to China could not be stronger,[4] and therefore <u>Halo</u> is distinguishable on this ground alone.

But most of all, <u>Halo</u> is distinguishable because in <u>Halo</u> the party resisting dismissal under the doctrine of *forum non conveniens* had not already filed the same litigation in the competent forum.  Here, Plaintiff has already embraced Chinese courts, seeking the exact same relief, and consequently contradicting all of Plaintiff's protestations to the adequacy of the Chinese forum. Simply stated, Plaintiff's decision to file the China Action is fatal to its argument that China is not an adequate forum, and the law on which it relies is inapposite.[5]

        2.    <u>Plaintiff's Own USPTO Filings Estop Plaintiff From Denying That The Same Invention Is Covered By both the '456 Design Patent and Its China Patent</u>

Plaintiff next tries to distinguish the China Action from the instant litigation by attempting to make this litigation about the jurisdiction in which the patent application was submitted, instead of the design that is protected by the patent.  Specifically, Plaintiff claims that the "subject matter" of this litigation is the '456 Design Patent, and because it is not clear whether the Chinese court will protect the '456 Design Patent, there is no guarantee that Plaintiff can obtain relief in China for the infringement of its design patent it claims is occurring.  Putting aside for the moment that Plaintiff has already filed the China Action to accomplish exactly that, Plaintiff's logic is

---

[4] Notwithstanding Plaintiff's assertion that Defendants have "not provided any evidence linking the infringing products in China to those in the U.S.," [Dkt. No. 64 at pg. 14], the subject matter of this case is the subject matter of the case in China because, as the affidavit of Mr. Wang states: "Each and every Talaria motorcycle that entered the U.S. market was manufactured in China."  [Certification of Fan Wang on behalf of Talaria at ¶ 4.]

[5] <u>IBM</u> is distinguishable for the exact same reason.  In <u>IBM</u>, the court declined to dismiss in favor of an English forum in a case brought by an American company (IBM) against two English companies on the grounds that "[t]he Court is unaware, and the Defendants have not proffered, any case law or authority supporting the notion that the English courts would (or even could) exercise jurisdiction over Plaintiff's claims arising under U.S. laws," and so the movants failed to demonstrate that English courts were an adequate alternative forum. <u>Id.</u> at 4.  Here, the evidence is undeniable that China is an adequate alternative forum because Plaintiff has already filed there.

nevertheless specious.

The subject matter of this case is about Plaintiff's design for a Light Electric Off-Road Motorcycle.  Plaintiff desperately claims—without offering any affidavit or other evidence—that the two designs are "not interchangeable".  But here again, Plaintiff's argument is belied by Plaintiff's own conduct.  Specifically, Plaintiff's argument is directly contradicted by the admission of its patent attorney, Robert L. Wolter, Esq. (USPTO Reg. #36972), who prosecuted Plaintiff's U.S. design patent application No. 29/607,893 that ripened into the patent in suit, U.S. Patent D854,456, when he filed and signed the Application Data Sheet dated June 16, 2017 in that U.S. case (the "ADS").  [Dkt. No. 57-3 at ¶¶ 5-6.]  The ADS claims priority to Chinese application No. 201730077820.5.  [Id.]  A claim of priority before the USPTO to a pending foreign application is provided for and governed by 35 U.S.C. § 119(a), that clearly states that such a U.S. application by statute must have been filed on "the same invention" as the foreign application.  Therefore, Mr. Wolter's signature on the ADS evidences that the invention in the China Action and the U.S. case are the same.

Finally, Plaintiff's filings with the USPTO are not "hearsay", as Plaintiff contends, as they are representations made by Plaintiff to a government entity (i.e., the USPTO), and furthermore, are not subject to reasonable dispute and thus are admissible under judicial notice.  See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) (documents recorded by the Patent and Trademark office "are public records subject to judicial notice"); Maxberry v. ITT Tech. Inst., No. 1:13-CV-00409-SEB, 2015 WL 416495, at *4 (S.D. Ind. Jan. 30, 2015) (PTO records are the proper subject of judicial notice); Insuremax Ins. Agencies, Inc. v. AEA Ins. Agencies, Inc., No. SA-13-CA-317-FB, 2014 WL 12481353 (W.D. Tex. Nov. 6, 2014) ("[E]ven if the [USPTO records] were submitted to prove the truth of the matter asserted, the [records] satisfy the public records exception to the hearsay rule set out in Federal Rule of Evidence 803(8)."); Vitek Sys., Inc. v. Abbott Labs.,

675 F.2d 190, 192 n.4 (8th Cir. 1982) (The "court may take judicial notice of Patent and Trademark Office documents.").

Having made these representations in its public filings with the USPTO, Plaintiffs are estopped from denying that the subject matter of this litigation can be litigated in China.  See Alpex Computer Corp. v. Nintendo Co., 102 F.3d 1214, 1221 (Fed.Cir. 1996) ("[P]ositions taken before the PTO may bar an inconsistent position on claim construction."); see also Zany Toys, LLC v. Pearl Enterprises, LLC, No. CIV.A. 13-5262 JAP, 2014 WL 2168415, at *6 (D.N.J. May 23, 2014) (Finding that defendant was estopped from arguing that THE NO! BUTTON trademark was non-distinctive because defendant had filed an application for the mark THE NO BUTTON!  The court further noted that "[defendant's] representations to the USPTO regarding its nearly identical mark indicates its belief that the THE NO! BUTTON mark is inherently distinctive. Because it already took the position to the USPTO that its mark was distinctive, it cannot now argue that [plaintiff's] Mark is not distinctive.").

3.    Plaintiff has failed to refute that a balancing of the relevant factors weighs in favor of dismissing this case

Perhaps unsurprisingly, Plaintiff completely ignores the fact that all parties to this case are based in China—where all the witnesses and documents are located—including the two former employees of Plaintiff (Shiguang Wang and Jun Ye) who Plaintiff has already tried to subpoena for depositions in San Francisco as being behind the alleged infringing design.  Instead, Plaintiff attempts to shift fields and contends that this case is really about U.S. distributors, rather than witnesses and documents relating to the alleged infringement.

In support, Plaintiff submits a single affidavit from a Colorado-based distributor, and goes on to implausibly claim that only this distributor possesses documents reflecting Defendants' sales in the United States.  Plaintiff fails to explain why it believes that Defendants do not possess documents concerning their own sales data (U.S.-based or otherwise), such that this litigation

would have to resort to a U.S.-based dealer to fill the breach.  Plaintiff further fails to explain why it believes that, notwithstanding the professed loyalty of its Colorado distributor, he will not turn over to Plaintiff any documents Plaintiff requests.  Plaintiff's arguments make no sense.

Indeed, Plaintiff's new contention about the importance of U.S.-based evidence is belied by Plaintiff's own discovery requests, which focus not on U.S.-based discovery, but rather on infringing activities in China.  Specifically, Plaintiff seeks documents concerning its two former China-based employees (both resident in China) who it claims led the infringing activities it alleges; their employment files; all design documents relating to the alleged infringing products; Defendants' internal communications concerning the products at issue in this case; internal marketing and design documents; sales data; inventory data; and a number of other confidential documents.  [Dkt. No. 58-3.]  Given that these documents go to the heart of Defendants' business, and Defendants are only based in China, it follows that virtually every single document requested is located in China and written in Mandarin Chinese.  Plaintiff does not plausibly dispute this.

Plaintiff's contention that "there has been no showing" that 1,700 documents that the parties submitted in the China Action about this very same design are "relevant" is silly.  If the documents were not relevant to the design, why did the parties submit them?  Plaintiff's argument makes no sense.

Plaintiff's arguments with respect to the public interest factors fare no better.  Plaintiff implausibly argues that Texas "has a significant local interest in this matter" because "Plaintiff has seven dealers in Texas who are facing competition from Defendants' infringing products", and so "their investment" needs to be "safeguarded" "by halting the sale of competing, infringing products".  [Dkt. No. 64 at pg. 19.]  Defendants respectfully submit that, as a matter of commonsense, if not geography, China has a greater interest than Texas in a dispute between two Chinese companies.  A Texas jury will no doubt wonder why they have been burdened with the

task of deciding such a dispute, where all the facts, parties, and key events occurred in China. Further, the Texas distributors whose investment Plaintiff is so concerned about safeguarding are not parties to this litigation; and Plaintiff does not have standing to "safeguard" their interests.

Simply stated, this action belongs in China. Any doubt on this issue was removed the day that Plaintiff filed the China Action.[6]

B.    Plaintiff Has Failed To Refute That This Case Should Be Dismissed Based On The International Abstention Doctrine

Contrary to Plaintiff's unsubstantiated assertions, Defendants have met their burden of showing that this case should be dismissed pursuant to the doctrine of international abstention. This case should be dismissed if this Court finds that a parallel proceeding exists and the relevant factors (i.e. similarity of the parties and issues, promotion of judicial efficiency, adequacy of alternative forum, considerations of fairness and prejudice to parties, and temporal sequence of the filings) weigh in favor of dismissal. See Anderson-Tully Lumber Co. v. Int'l Forest Prod., S.r.L., No. CIVA505CV68 DCB JCS, 2007 WL 2872413, at *6 (S.D. Miss. Sept. 26, 2007).

As discussed above in section II.A., Plaintiff has not refuted Defendants' arguments that the issues in both the China Action and the U.S. Action are the same (i.e. that Defendants have allegedly infringed on Plaintiff's design for a Light Electric Off-Road Motorcycle), that litigating this case in China would promote judicial efficiency, that China is an adequate alternative forum, or that considerations of fairness and prejudice to the parties weigh in favor of dismissal.[7]

Plaintiff does try to argue that the parties are not similar by asserting that the cases relied upon by Defendants, which stand for the proposition that a parent-subsidiary relationship is

---

[6] Defendants stand on their arguments as to the private and public factors set out in greater detail in Defendants' initial brief.

[7] Oddly enough, Plaintiff casts doubt on whether any foreign witnesses proffered by Defendants would be able to provide any relevant testimony [Dkt. No. 64 at pg. 24] when Plaintiff's actions of subpoenaing these witnesses to testify indicates that Plaintiff believes that these witnesses will be able to provide relevant testimony.

sufficient to establish that two parties are similar, do not apply here because those cases were decided on in the context of a stay as opposed to a dismissal, which Defendants are seeking. [Dkt. No. 64 at pgs. 22-23.]  However, Plaintiff has not offered an alternative standard to be used to determine whether parties are similar for the purposes of dismissing a case based on the international abstention doctrine.  Further, despite claiming on the one hand that a parent-subsidiary relationship is insufficient to establish that two parties are similar, Plaintiff also suggests, on the other hand, that a parent-subsidiary relationship could establish that two parties are similar (provided that there is "complete stock ownership, common officers and directors, and the use of organizational charts illustrating lines of authority…") and cites to Berger v. Columbia Broad. Sys., Inc., 453 F.2d 991 (5th Cir. 1972), a case that does not even discuss international abstention, in support of its position.  Essentially, Plaintiff is arguing that Defendants' cases are not on point because they address international abstention in the context of a stay (as opposed to a dismissal) when Plaintiff's sole point of authority does not discuss international abstention **at all**.

Plaintiff also relies on Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996), to put forth the argument that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."  [Dkt. No. 64 at pg. 21.]  However, Quackenbush has since been distinguished by other courts that have found that the holding in Quackenbush is inapplicable in the international abstention context.  See Posner v. Essex Ins. Co., 178 F.3d 1209 (11th Cir. 1999) ("Although we recognize that Quackenbush contains broad language concerning the inapplicability of abstention doctrines where plaintiffs assert legal claims over which a court has jurisdiction, the framework of that decision leads us to conclude that **the Supreme Court did not intend that holding to extend to cases raising the abstention issue in light of concurrent international jurisdiction**.") (emphasis added); Goldhammer v. Dunkin' Donuts, Inc., 59 F.

Supp. 2d 248, 252 (D. Mass. 1999) ("Quackenbush does not crisply govern in the area of international abstention because the considerations involved in deferring to state court proceedings are different from those involved in deferring to foreign proceedings.") (alterations in original). Plaintiff's argument that international abstention is inapplicable in actions for damages is therefore meritless.

Accordingly, this Court should abstain from hearing Plaintiff's claims.

C.    The Instant Motion Is Not Untimely

Plaintiff closes its brief by dedicating a paragraph to the notion that this motion is somehow untimely, arguing vaguely that Defendants should have filed this motion right after Plaintiff filed the China Action in October 2023.  Plaintiff cites no prejudice for the instant motion having been filed in April 2024 instead of immediately after Plaintiff filed the China Action in October 2023.  No discovery has occurred, as there have been pending motions, and no scheduling order has yet been entered by the Court.

Further, Plaintiff itself failed to tell this Court about its filing of the China Action, or its rapid progress to a hearing on the merits in late January, despite many opportunities to do so in its recent filings.  Indeed, even in its instant opposition brief, Plaintiff curiously does not mention the China Action at all in its rendition of the procedural posture.  Nor does Plaintiff cite any authority for the proposition that Defendants' instant motion is untimely under the instant circumstances, where the cases is still in its pre-discovery stage.  For these reasons, Plaintiff's timeliness argument should be rejected.

III.   **CONCLUSION**

For the reasons stated above, Defendants' motion should be granted and this matter should be dismissed.  In the alternative, this case should be stayed pending the resolution of the China Action.

Respectfully submitted,

*/s/ Jiangang Ou*
Jiangang Ou, Esq. (No. 24127006)
Bruce M. Gorman, Jr., Esq. (admitted *pro hac vice*)
Tanneika Minott, Esq. (admitted *pro hac vice*)
*Attorneys for Defendant Talaria Power Tech*
*(HongKong) Co., Ltd. and Tanli Power Technology*
*(Chongqing) Co., Ltd.*

Dated:  May 31, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Jiangang Ou, Esquire, hereby certify that I have served upon all parties a true and correct copy of Defendants' Motion to Dismiss on May 31, 2024 via this Court's electronic filing system.

Respectfully submitted,

_/s/ Jiangang Ou_____

Dated: May 31, 2024

228913791 v1